## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-cr-30073** |
| | ) | |
| **JEREMY OUTLAND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Jeremy Outland's Motion to
Suppress (d/e 26).  For the reasons set forth below, Defendant's
motion is DENIED.

## I. BACKGROUND

On August 18, 2017, Daniel Weiss, then an officer with the
Springfield Police Department, applied for an order compelling the
production of information relating to Defendant's phone number,
217-717-5202.  Application (d/e 26-1).  In the application, which
was made pursuant to 18 U.S.C. §§ 2703(d) and 3122, Weiss stated
that the cell phone information sought was relevant and material to
an ongoing narcotics investigation to locate Defendant, who was

using his cell phone to distribute heroin in the Springfield, Illinois, area. Specifically, Weiss indicated that the location of Defendant's phone would assist law enforcement in determining Defendant's location and reveal his heroin source.

The state court judge to whom the application was presented signed an order granting the application and authorizing the production of information relating to Defendant's cell phone number. Order (d/e 26-2). The order specifically compelled the production of "cell site activations" as well as "direct connect activity . . . at call origination and call termination" and forced the telecommunication provider to provide support needed to permit triangulation of the target telephone. The order was valid for 60 days.

Several months later, on November 21, 2017, Weiss submitted a Complaint for Search Warrant to a state court judge. Complaint (d/e 26-3). The Complaint sought a warrant to search both the building located at 826 Martin Luther King Drive and Defendant. The items to be seized pursuant to the search warrant included heroin and drug paraphernalia.

In support of the Complaint, an affidavit signed by "John Doe"

was tendered to the state court judge. Doe's affidavit stated that he went to 826 South Martin Luther King to purchase heroin from "Jay." Doe knocked on the door, and "Jay" answered. "Jay" stepped onto the front porch and pulled a sandwich bag from his pocket. Inside the bag was what Doe believed to be 10 grams of heroin. "Jay" informed Doe that he had just gone to Chicago with his wife and picked up "50," a reference, in Doe's opinion, to 50 grams of heroin. "Jay" also stated that he had been stopped by the police, who did not locate the heroin. Doe, based on his observations, indicated that he believed there to be illegal narcotics inside the residence located at 826 South Martin Luther King.

In addition to Doe's affidavit, Weiss submitted his own affidavit in support of the search warrant application. Weiss's affidavit indicated that at approximately 6:00 a.m. on November 21, 2017, Weiss had contact with Doe. Much of Weiss's affidavit consists of statements made by Doe to Weiss that almost identically track the statements Doe made in his own affidavit. Weiss's affidavit stated that Doe had advised Weiss that, at approximately 7:00 p.m. on November 20, 2017, Doe went to the residence at 826 South Martin Luther King Drive and conversed with a person Doe

knew as "Jay." Weiss showed Doe a photograph of Defendant's residence to verify the address. Weiss verified that Defendant and "Jay" were the same person by showing Doe a booking photograph of Defendant.

According to Weiss's affidavit, upon arrival at 826 South Martin Luther King Drive, Doe knocked on the door and Defendant answered. When Doe stated that he wanted to purchase heroin, Defendant pulled a plastic bag containing what Doe believed was at least 10 grams of heroin. Defendant advised Doe that Defendant and his wife had been pulled over on November 19, 2017, on their way back from Chicago. Defendant indicated that he had just "got '50'" and that the police had not located it during the stop. Based on past conversations with Defendant, Doe understood "50" to signify 50 grams of heroin. Doe informed Weiss that Defendant obtained his heroin from Chicago.

Weiss's affidavit also contained additional information partially corroborating Doe's information. The affidavit stated that, on November 19, 2017, law enforcement officers were tracking Defendant as he traveled to Chicago, Illinois. Just 45 minutes after arriving in Chicago, Defendant began driving back to Springfield.

An Illinois State Police trooper conducted a traffic stop of Defendant's vehicle, which Defendant was driving, just south of Williamsville, Illinois. Tonya Irwin, who was referred to as Defendant's "wife" in Weiss's affidavit, was a passenger in the vehicle. Although a K-9 officer alerted on Defendant's vehicle while conducting a free air sniff, officers found no contraband in the vehicle or on either Defendant or Irwin.

Weiss's affidavit also informed the state court judge that Doe was providing information to the Springfield Police Department for consideration on criminal charges pending against Doe. In addition, Weiss's affidavit noted that Doe had multiple arrests and convictions for the manufacture and delivery of controlled substances.

At 9:22 a.m. on November 21, 2017, the state court judge ordered that the requested search warrant be issued. Less than an hour later, Springfield Police Department Officer Warnisher initiated a traffic stop on the vehicle Defendant was driving. Police Report (d/e 26-5). After finding three used syringes and a small spoon during a search of Defendant's person, Warnisher arrested Defendant and advised Defendant of his Miranda rights.

While transporting Defendant in a squad car, Warnisher observed a plastic bag covered in a white powdery substance on the seat next to Defendant. Defendant's face and coat were covered in a white substance. Warnisher drove Defendant to the emergency room at St. John's Hospital (St. John's). The substance in the back seat of Warnisher's squad car field tested positive for heroin.

After arriving at St. John's, Defendant was triaged at 10:46 a.m. and found to be unresponsive. Medical Records (d/e 26-6). He became responsive after receiving Zofran and 2 milligrams of Narcan. After again becoming unresponsive, he received another 2 milligrams of Narcan. Defendant was placed on an overnight Narcan drip. Hospital staff woke Defendant constantly because Defendant was experiencing apneic periods, meaning that Defendant's breathing would stop temporarily while Defendant was sleeping. Medical Records (d/e 26-7).

Defendant's medical records also note that, at 11:33 a.m. on November 21, 2017, Defendant's speech was slurred but his mental functioning had improved significantly. At 12:13 p.m., Defendant was alert, responsive, cooperative, and oriented as to person, place, and time. Defendant was also noted as being wide awake and

talking to someone with the Springfield Police Department. At both 12:59 p.m. and 1:45 p.m., Defendant's status remained unchanged from his status at 12:13 p.m. and he was still talking to someone with the Springfield Police Department.

After reading Defendant his Miranda rights, Weiss interviewed Defendant at St. John's. Defendant made several incriminating statements, including that he had ingested heroin in Warnisher's squad car and had made over 50 trips to Chicago in the preceding 18 to 24 months for the purpose of purchasing heroin and bringing it back to Springfield. Police Report (d/e 26-5).

On December 5, 2017, Defendant was charged in a two-count Indictment (d/e 6). Count One charged Defendant with conspiring to distribute 100 grams or more of mixtures or substances containing heroin. Count Two charged Defendant with possessing with the intent to distribute mixtures and substances containing heroin. On December 19, 2017, Defendant entered a plea of not guilty on each count.

On February 13, 2019, Defendant filed his Motion to Suppress, asserting several grounds for the suppression of evidence obtained by the Government. First, Defendant argues that the

Government did not have the probable cause needed to obtain information relating to his cell phone. Defendant also argues that the search warrant issued in November 2017 was based on stale information and not supported by probable cause. Next, Defendant contends that the police violated his constitutional rights when officers stopped and searched him on November 21, 2017. Lastly, Defendant argues that his statements to the police on November 21, 2017 were involuntary because Defendant was under the influence of heroin and multiple medications, including Revia, Zofran, and Narcan.

On March 8, 2019, the Government filed its Response to Defendant's Motion to Suppress (d/e 29). The Government contends that the August 2017 order and the November 2017 search warrant were supported by probable cause, that the stop and search of Defendant did not violate Defendant's constitutional rights, and that Defendant's statements to the police on November 21, 2017 were voluntary.

On May 23, 2019, the Court held an evidentiary hearing on the Motion to Suppress. The Court heard testimony from DEA Special Agent Chris McGuire; Weiss, now a detective with the

Springfield Police Department; and Defendant Jeremy Outland.
Weiss testified that he took Doe to meet the state court judge who
authorized the November 2017 search warrant. Weiss was present
when the judge met with Doe. Weiss supplied the judge with Doe's
convictions for manufacture and delivery of a controlled substance.
Weiss also informed the judge that Doe was working to get out of
pending charges, information also set forth in Weiss's affidavit.
Weiss testified that the police did not provide Doe with information
regarding Defendant's traffic stop on November 19, 2017.

   Weiss also testified that Defendant was very coherent during
the hospital interview, which took place after Weiss was informed
that Defendant had asked to speak with him. While Defendant
appeared to be under the influence of heroin, he was not nodding
off and never fell asleep or passed out during the interview. Weiss
had no concerns as to whether Defendant's heroin use prevented
him from knowingly and voluntarily waiving his Miranda rights at
the St. John's.

   During his testimony, Defendant, while admitting that he used
heroin on November 21, 2017, denied that he ingested heroin while
being transported in the police car. He also denied requesting to

speak with Weiss at the hospital. Defendant stated that he felt that his statements to Weiss at St. John's were coerced because Defendant never asked to meet with or talk to any police officers. Defendant also testified that he made statements to the officers only because he was under the influence of heroin and the medications he had been given at the hospital, which included Revia, Zofran, and Narcan. Defendant did not remember signing a written Miranda waiver or orally waiving his Miranda rights during his interview with Weiss.

## II. ANALYSIS

**A.    The Good-Faith Exception to the Exclusionary Rule Applies to Any Information Obtained Pursuant to the Order Entered in State Court on August 18, 2017.**

The parties disagree over whether the order entered by the state court judge on August 18, 2017 for the production of information relating to phone number 217-717-5202 was supported by probable cause. However, a determination of whether probable cause was present is unnecessary to resolve the question of whether evidence obtained pursuant to the order must be suppressed.

In Carpenter v. United States, the Supreme Court held that

"the Government must generally obtain a warrant supported by probable cause" before acquiring an individual's cell-site location information. 138 S. Ct. 2206, 2221 (2018). Before <u>Carpenter</u>, the Government could obtain such information by showing that there were "reasonable grounds" to believe the information was "relevant and material to an ongoing investigation." 18 U.S.C. § 2703(d). Because the Court found that the showing required by 18 U.S.C. § 2703(d) fell "well short of the probable cause required for a warrant," the Court held that an order issued pursuant to 18 U.S.C. § 2703(d) "is not a permissible mechanism for accessing historical cell-site records." <u>Carpenter</u>, 138 S. Ct. at 2221.

However, "evidence obtained in good-faith reliance on a statute later declared unconstitutional need not be excluded." <u>United States v. Curtis</u>, 901 F.3d 846, 848 (7th Cir. 2018). Such good-faith reliance is present here. In August 2017, Weiss sought an order—not a warrant—pursuant to § 2703(d) for the production of cell-site location information. The order compelling the production of information relating to Defendant's phone was issued on August 18, 2017, approximately 10 months before the Supreme Court issued its decision in <u>Carpenter</u>. Even assuming that probable

cause was lacking, because any information obtained pursuant to the order was obtained in good-faith reliance on the procedures set forth in 18 U.S.C. § 2703(d), the information need not be excluded. See Curtis, 901 F.3d at 848.

**B.    The Search Warrant Issued on November 21, 2017 Was Supported by Probable Cause.**

When a search is authorized by a warrant, the reviewing court defers to the issuing judge's finding of probable cause "if there is substantial evidence in the record that supports that decision." United States v. Sims, 551 F.3d 640, 644 (7th Cir. 2008) (internal quotation marks omitted).  A judge may not rely solely on "conclusory allegations" or a "bare bones" affidavit, however.  Id.

An affidavit establishes probable cause when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence that would cause a reasonable person to believe that a search will uncover evidence of criminal activity.  See United States v. Hicks, 650 F.3d 1058, 1065 (7th Cir. 2011).  "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  Id. (internal quotation marks omitted).

When the affidavit is supported by information from an informant, the probable cause determination turns on the informant's credibility.  <u>United States v. Bell</u>, 585 F.3d 1045, 1049 (7th Cir. 2009).  To assess whether an informant's information is sufficiently reliable to support the issuance of the warrant, a court considers: (1) the degree to which the informant acquired knowledge of the events through firsthand observation; (2) the amount of detail provided; (3) the extent to which the police corroborated the informant's statements; (4) the interval between the dates of the events and the application for the search warrant; and (5) whether the informant appeared before the judge in person and filed his own affidavit.  <u>See</u> <u>United States v. Sutton</u>, 742 F.3d 770, 773 (7th Cir. 2014).  No one factor is dispositive.  <u>See</u> <u>United States v. Brack</u>, 188 F.3d 748, 756 (7th Cir. 1999) ("[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.").

The information supplied by Doe was sufficiently reliable to supply the probable cause needed for the issuance of the November 2017 search warrant.  Doe both submitted an affidavit and appeared before the state court judge in person.  The information

included in Doe's affidavit was the result of Doe's interactions with Defendant on November 20, 2017, just one day prior to the search warrant application. Doe provided specific details of his meeting with Defendant, including that Defendant pulled from his pocket what Doe believed to be approximately 10 grams of heroin. Doe's affidavit also stated that Defendant made a statement that Doe interpreted to mean that Defendant had recently picked up 50 grams of heroin from Chicago. Defendant also mentioned that he and his wife were recently pulled over by police officers, who did not find any heroin.

Further supporting the state court judge's probable cause determination was the extent to which Doe's story was corroborated by law enforcement. Weiss's affidavit notes that on November 19, 2017, an Illinois State Police trooper conducted a traffic stop on a vehicle Defendant was driving. Defendant was driving from Chicago to Springfield with a female passenger. A search of Defendant, Defendant's vehicle, and the passenger turned up no controlled substances. Weiss informed the state court judge that this information about Defendant had not been made public, making it

much more likely that Doe's knowledge regarding the traffic stop came from a discussion with Defendant.

Defendant notes that Doe's presence at Defendant's residence on November 20, 2017 was neither requested nor observed by law enforcement.  Further, nothing in Weiss's affidavit states that Doe had provided reliable information in the past.  Moreover, neither Doe nor the police obtained heroin as a result of Doe's trip to Defendant's residence on November 20.  Additionally, nothing in Officer's Weiss's affidavit suggests that Doe could identify heroin. Lastly, Doe's affidavit does not state that Doe thought there was reason to believe that a search of Defendant, as opposed to Defendant's residence, would lead to the discovery of drugs.

These alleged shortcomings, even taken together, fall far short of establishing that there is not substantial evidence in the record to support the state court judge's finding of probable cause.  True, Doe's interactions at Defendant's residence on November 20, 2017 were not requested or monitored by law enforcement.  But a warrant need not rely on an informant's firsthand knowledge to be supported by probable cause.  See Brack, 188 F.3d at 756 (lack of informant's firsthand knowledge may be compensated by a strong

showing of corroboration or other indicia of reliability).  And if an informant's secondhand knowledge can establish probable cause in some cases, an informant's firsthand knowledge stemming from interactions not observed by law enforcement can surely do the same.  As noted above, some of the information Doe provided in his affidavit was corroborated by law enforcement.

Next, although Weiss's affidavit does not state that Doe had provided reliable information in the past, "police are not limited to relying only on informants with proven track records of providing truthful information." United States v. Mitten, 592 F.3d 767, 773-74 (7th Cir. 2010).  An informant's reliability and veracity can be shown by corroboration, the fact that the statement is contrary to his own penal interests, and where the information is based on personal observation. Id. at 774.  As detailed above, Doe's affidavit is based on his personal observations, some of which were corroborated by law enforcement.  In addition, Doe's affidavit indicates that he went to Defendant's residence to purchase heroin, a statement contrary to Doe's penal interests.

Further, Weiss provided the state court judge with information regarding Doe's prior drug convictions and the fact that Doe, who

met with the judge face-to-face, was working to get out of pending criminal charges. While Weiss's affidavit did not vouch for Doe's credibility, the state court judge had more than enough information to determine that Doe was credible.

Next, the fact that neither affidavit mentioned that Doe obtained heroin from Defendant on November 20, 2017 is not fatal to the state court judge's finding of probable cause. A finding of probable cause may have been even stronger had Doe obtained heroin from Defendant and turned it over to the police, who then confirmed that the substance was heroin. But given the facts presented to the state court judge, such information was not needed to establish the probable cause needed for the search warrant.

Similarly, the fact that neither affidavit spoke directly to Doe's ability to identify heroin does not require a finding that no probable cause existed. The state court judge was informed of Doe's multiple arrests and convictions for drug-related offenses. Plus, Doe admitted in his affidavit that he went to Defendant's residence to purchase heroin.

Lastly, Doe's affidavit indicated that on November 20, 2017, Defendant possessed about 10 grams of what Doe believed to be heroin. This statement, along with the other information presented to the state court judge, established probable cause to believe that a search of Defendant would lead to the discovery of drugs. The fact that Doe's affidavit did not indicate Doe's belief that a search of Defendant would lead to the discovery of drugs does not change that fact.

In a separate, but related, argument, Defendant takes the position that the affidavits submitted in support of the search warrant application contained stale information. Specifically, Defendant notes that over 14 hours had elapsed from the time Doe had allegedly seen Defendant in possession of heroin to the time the state court judge authorized the search warrant.

There is no "bright line" rule for determining when information is stale. Sutton, 742 F.3d at 774. A confidential source's affidavit "must merely provide enough information to lead a reasonably prudent person to believe a search would be fruitful." Id. The age of the information received from a confidential source is considered with the other relevant factors. Id.

The information provided to the state court judge was not stale. Doe, who admitted to having gone to Defendant's residence to purchase heroin, informed the judge that he had seen Defendant possess about 10 grams of a substance Doe believed to be heroin no more than 15 hours prior. Ten grams of heroin is a significant amount. Doe's statement would lead a reasonably prudent person to believe that a search of Defendant and Defendant's residence would lead to the discovery of heroin. See id. (holding that ten days is not enough time "to completely dispel any belief that a search would be fruitful"); United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991) (information that the defendant sold drugs at his residence 72 hours prior was not "critically deficient").

In sum, substantial evidence in the record supports the state court judge's determination that the November 2017 search warrant was supported by probable cause. Accordingly, evidence obtained through the execution of that search warrant need not be suppressed.

**C.    Defendant's Fourth Amendment Rights Were Not Violated When the Police Stopped and Searched Him on November 21, 2017.**

Defendant's argument that his Fourth Amendment rights were

violated when the police stopped and searched him on November 21, 2017 relies on <u>Bailey v. United States</u>.  In <u>Bailey</u>, the Supreme Court held that the rule permitting the detention of occupants on the premises incident to the execution of a search warrant absent any individualized suspicion is spatially constrained and limited to "the immediate vicinity of the premises to be searched."  568 U.S. 186, 200-01 (2013).  Defendant argues that because he was stopped three blocks from his residence, the police did not have the authority to detain him incident to the search of his residence.

But Defendant was not detained incident to the search of his residence.  The search warrant issued by the state court judge on November 21, 2017 authorized the search of both Defendant's person and his residence.  And, as explained above, the search warrant was supported by probable cause.  Accordingly, the police were authorized to detain Defendant wherever they found him and search his person.  Defendant's Fourth Amendment rights were not violated when the police stopped and searched him on November 21, 2017.  <u>See</u> <u>Bailey</u>, 568 U.S. at 192 (noting that seizures are reasonable if based on probable cause).

**D.** **Defendant's Statements to Officer Weiss at St. John's Hospital Were Not Involuntary.**

A defendant's statements to police officers are voluntary if they are "the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." United States v. Gillaum, 372 F.3d 848, 856 (7th Cir. 2004) (internal quotation marks omitted).  For a statement to be found involuntary within the meaning of the Due Process Clause of the Fourteenth Amendment, coercive police activity must be present. Id.  "A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective."  United States v. Toro, 359 F.3d 879, 885 (7th Cir. 2004).

Defendant, in arguing that his statements to Weiss at St. John's were involuntary, notes that he was under the influence of heroin and several medications, including Revia, Zofran, and Narcan.  But, even assuming that Defendant was intoxicated, Defendant need also establish that his statements were coerced by Weiss.  At the suppression hearing, Defendant testified that he felt coerced because he did not request to speak with Weiss.  However,

the fact that a defendant has not requested to speak with a police officer does not automatically render involuntary any statements made by the defendant to the officer. Further, Defendant's testimony that he did not ask to speak with Weiss was contradicted by Weiss, who testified that Defendant had asked to speak with him while Defendant was at St. John's. On this point, the Court finds Weiss more credible than Defendant, in part because Defendant's memory of his actions while at St. John's is incomplete. Indeed, Defendant testified at the suppression hearing that he could not remember orally waiving his Miranda rights before being interviewed by Weiss.

Defendant has failed to show that Weiss coerced any of his statements. Therefore, even though Defendant had recently ingested heroin and been administered several medications, his statements to Weiss at St. John's were not involuntary and need not be suppressed.

### III. CONCLUSION

For the foregoing reasons, Defendant Jeremy Outland's Motion to Suppress (d/e 26) is DENIED.

ENTER: July 19, 2019

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE